# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> 6,627 SQUARE FEET OF LAND, MORE OR LESS, SITUATE IN THE DISTRICT OF COLUMBIA (KNOWN AS 2506 28TH STREET NE), *et al.*, <br><br> and <br><br> 7,360 SQUARE FEET OF LAND, MORE OR LESS, SITUATE IN THE DISTRICT OF COLUMBIA (KNOWN AS 2500 28TH STREET NE AND 2510 BLADENSBURG ROAD NE), *et al.*, <br><br> Defendants. | Civil Action Nos. 21-1753 and 21-1757 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff, the Washington Metropolitan Area Transit Authority ("WMATA"), seeks to take possession of several tracts of land bordering the Bladensburg Bus Garage in Northeast, Washington, D.C., in order to expand the terminal to hold additional buses as part of an ongoing capital improvement project. In furtherance of that goal, in June 2021, plaintiff filed civil actions "under the power of eminent domain through a Declaration of Taking" to gain title to these tracts of land, so that "just compensation to the owners and parties in interest" could be determined and awarded. *See* Compl. ¶ 1, WMATA 1753 ECF No. 1, WMATA 1757 ECF No. 1. [1] Two of

---

[1]     On the same day as the two civil actions addressed in this Memorandum Opinion were filed, plaintiff also filed a third related case seeking to condemn another tract of land in connection with the Bladensburg Bus Garage project. *See* Not. Related Case, *WMATA v. 5,255 Square Feet of Land*, No. 21-cv-1743 (BAH), ECF No. 5. The

these tracts of lands, and the corresponding lawsuits filed on the same day as related, *see* Not. Related Case, WMATA 1753 ECF No. 5; Not. Related Case, WMATA 1757 ECF No. 5, are addressed in this Memorandum Opinion. [2]  The first is a roughly 6,627 square foot property located at 2506 28th Street NE, Washington, DC, in which defendants Northeast Iron Works Land Partnership and Northeast Iron Works, Inc. have claimed an interest.  *See* Answer at 1, WMATA 1753 ECF No. 15.  The second is a roughly 7,360 square foot property located at 2500 28th Street NE, Washington, DC, in which defendants 1210 Bladensburg Road LLC and Tasty Kabob and Gyro, Inc., have claimed an interest.  *See* Answer, WMATA 1757 ECF No. 15.

Defendants in both these cases object to the taking of their property.  *See generally id.*; WMATA 1753 Answer.  Plaintiff has now moved for judgment on the pleadings, seeking that the Court adjudge defendants' properties as taken lawfully, in accordance with a valid public purpose.  *See* Pl.'s Mot. for J. on the Pleadings as to the Authority for and Public Purpose of the Taking and to Strike Insufficient Defenses and Objections ("Pl.'s Mot."), WMATA 1753 ECF No. 17, WMATA 1757 ECF No. 19.  Plaintiff also moves to strike the other defenses and objections asserted by defendants as legally invalid.  *See id.*  For the reasons set forth below, plaintiff's motion is granted as to both cases. [3]

---

parties in that suit pursued a successful mediation and, after a stipulated final judgment was entered, that third case is now closed.  *See* Final J., *WMATA v. 5,255 Square Feet of Land*, No. 21-cv-1743 (BAH), ECF No. 25.

[2]       For clarity, each action is referenced by its civil case number.  Thus, for example, Civil Action No. 21-1753 will be referred to as "WMATA 1753," with docket filings in that case identified by the prefix and appropriate docket number.  The briefing between the two cases is almost entirely duplicative, with minor differences in page numbers.  Unless otherwise specified, citations are to the versions of the filings docketed in WMATA 1753.

[3]       The parties do not contest, and the Court finds, that jurisdiction over these cases may be properly exercised, pursuant to the Washington Metropolitan Area Transit Authority Compact, Pub. L. No. 89-774, § 81, 80 Stat. 1324, 1324 (codified at D.C. CODE § 9-1107.01) (the "WMATA Compact"), which provides that "[t]he United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia, and the District of Columbia, of all actions brought by or against the Authority."  *See* Compl. ¶ 2; Answer ¶ 2.

## I.    BACKGROUND

In 2019, plaintiff announced plans to overhaul the Bladensburg Bus Garage, first built in 1962, in order to "modernize the facility" that currently houses 260 buses and support vehicles, and "dramatically improv[e] essential bus operations and maintenance" by creating additional bus spaces. *Bladensburg Bus Garage Reconstruction Project*, WMATA (last visited July 5, 2022), https://www.wmata.com/initiatives/plans/Bladensburg/index.cfm.   The proposal also allocated "space for electric bus infrastructure in the future . . . consistent with Metro's zero-emission bus plan." *Id.*

In connection with this project, on June 30, 2021, plaintiff filed suit in this Court, seeking to exercise its "power of eminent domain" to condemn (1) a tract of land 6,627 square feet in size, located at 2506 28th Street NE, *see* WMATA 1753 Compl. at 1; and (2) another property 7,360 square feet in size, located at 2500 28th Street NE, *see* WMATA 1757 Compl. at 1. [4]   In the schedules filed with the Complaint in each case, plaintiff explained that it was authorized to acquire the property pursuant to (1) section 82 of the WMATA Compact, Pub. L. No. 89-774, 80 Stat. 1324, 1350–51, *as amended by* the National Capital Area Transit Act of 1972, Pub. L. No. 92-517, 86 Stat. 999 (codified at D.C. CODE § 9-1107.01); and (2) the D.C. eminent domain procedures, D.C. CODE § 16-1351 *et seq*.   Compl., Sched. A, Authority for the Taking at 1, WMATA 1753 ECF No. 1-2, WMATA 1757 ECF No. 1-2.   The "public purpose" for acquiring the property was "the construction, operation, use, and maintenance of a replacement bus garage facility and related facilities," *id*., Sched. B, Public Purpose at 1, WMATA 1753 ECF No. 1-3, WMATA 1757 ECF No. 1-3, pursuant to the WMATA "Fiscal Year 2021 Budget Capital Improvement Project 0311 – Bladensburg Bus Garage Replacement," *see* Sched. A at 1.

---

[4]        The property at issue in WMATA 1757 is listed alternatively as 2510 Bladensburg Road NE, Washington, DC.   *See* Compl., Sched. C, Description of the Property, WMATA 1757 ECF No. 1-4.

Plaintiff also provided more detailed descriptions of the tracts of land, *see id.*, Sched. C,

Description of the Property, WMATA 1753 ECF No. 1-4, WMATA 1757 ECF No. 1-4, and *id.*,

Sched. D, Map, WMATA 1753 ECF No. 1-5, WMATA 1757 ECF No. 1-5, and clarified that the

estate to be taken in the properties was "fee simple absolute, including all improvements and

appurtenances, but subject to any existing public utility easements," or interests held by the

District of Columbia, *id.*, Sched. E, Estate to be Acquired at 1, WMATA 1753 ECF No. 1-6,

WMATA 1757 ECF No. 1-6. [5]

In each case, plaintiff also estimated the just compensation for the taking and listed the

parties known to have an interest in the property.  In WMATA 1753, just compensation was

estimated to be $880,000, *id.*, Sched. F, Estimate of Just Compensation, WMATA 1753 ECF No.

1-7, and the parties known to have an interest in the property were (1) defendant Northeast Iron

Works Land Partnership, which was listed on the deed; (2) defendant Northeast Iron Works Inc.,

according to an unrecorded lease agreement; and (3) the DC Office of Tax and Revenue, *id.*,

Sched. G, Interested Parties at 1, WMATA 1753 ECF No. 1-8. [6]  In WMATA 1757, just

compensation was estimated at $1,060,000, *id.*, Sched. F, Estimate of Just Compensation,

WMATA 1757 ECF No. 1-7, and the parties known to have an interest in the property were (1)

defendant 2510 Bladensburg Road LLC, which was listed on the deed; (2) defendant Tasty

Kabob and Gyro, Inc., according to an unrecorded lease agreement; (3) two "[t]rustees for the

benefit of United Bank," according to a "Deed of Trust dated September 6, 2017"; (4) United

---

[5]    Taking the property "in fee simple" creates "a new title and extinguishes all existing possessory and ownership interests not specifically excepted."  *Calf Island Cmty. Tr., Inc. v. Young Mens Christian Assoc. of Greenwich*, 392 F. Supp. 2d 241, 245 n.1 (D. Conn. 2005) (citing *A.W. Duckett & Co. v. United States*, 266 U.S. 149, 151 (1924)).

[6]    On November 16, 2021, the third entity identified as an "interested party" in Schedule G to the WMATA 1753 Complaint, the DC Office of Tax and Revenue, filed a notice "disclaim[ing] any right, title, claim or interest in the compensation paid or to be paid in this case."  Def.'s Disclaimer of Interest at 1, WMATA 1753 ECF No. 24-1. No other party has appeared asserting any interest in the property.

Bank, according to a "Collateral Assignment of Leases and Rents dated September 6, 2017"; and (5) the DC Office of Tax and Revenue, *id.*, Sched. G, Interested Parties at 1–2, WMATA 1757 ECF No. 1-8. [7]

Along with the Complaint, plaintiff filed a Notice of Condemnation ("Not. Condemn."), WMATA 1753 ECF No. 1-9, WMATA 1757 ECF No. 1-9, addressed to those entities identified as interested parties, and instructing that, if those interested parties had "any objection or defense to the taking of the property in which [they] have or claim some interest," to file an Answer to the Complaint within 21 days "stating the nature and extent of the interest claimed and stating all [their] objections and defenses to the taking of the property." Not. Condemn. at 1–2. The Notice explained that "failure to serve an Answer [would] constitute consent to the taking and . . . a waiver of all defenses and objections to the taking." *Id.* at 2.

That same day, plaintiff filed, in both cases, a Declaration of Taking from Nina M. Albert, Vice President of Real Estate and Parking for WMATA, affirming that the authority and public purpose for the takings and the description of the properties were as set forth in the schedules filed with the Complaint, and declaring that WMATA was depositing the estimated just compensation "in the registry of the Court for the use and benefit of the persons entitled thereto." Decl. of Taking ("Albert Decl.") at 1–2, WMATA 1753 ECF No. 2, WMATA 1757 ECF No. 2. To facilitate that deposit, and pursuant to Federal Rule of Civil Procedure 67(a) and

---

[7]     After filing the Complaint, on September 7, 2021, plaintiff moved to add the District of Columbia Water and Sewage Authority as an additional interested party, Pl.'s Not. Additional Interested Party & Mot. Add Party Under Rule 71.1(c)(3), WMATA 1757 ECF No. 17, which motion was granted, *see* Order, WMATA 1757 ECF No. 18.
        On October 4, 2021, United Bank and the two trustees of United Bank identified as "interested parties" in Schedule G to the WMATA 1757 Complaint (the "United Bank Defendants") filed a notice "disclaim[ing] any right, title, claim or interest in the compensation paid or to be paid in this case." Defs.' Disclaimer of Interest at 1, WMATA 1757 ECF No. 22-1. On October 26, 2021, the District of Columbia Water and Sewage Authority did the same, *see* Not. Disclaimer of Interest, WMATA 1757 ECF No. 26, as did the only other entity identified as an "interested party," the D.C. Office of Tax and Revenue, on December 6, 2021, *see* Not. Disclaimer of Interest, WMATA 1757 ECF No. 31. No other party has appeared asserting any interest in the property.

D.D.C. Local Civil Rule 67.1, plaintiff moved for an order to deposit the estimated just compensation in the Court's registry, *see Ex Parte* Appl. for Order to Deposit Estimated Just Compensation, WMATA 1753 ECF No. 3, WMATA 1757 ECF No. 3, which motion was granted on July 2, 2021, *see* Order Directing Clerk to Deposit Funds into Court Registry, WMATA 1753 ECF No. 7, WMATA 1757 ECF No. 7; *see also* WMATA 1753 Deposit of Sequestered Funds (July 9, 2021), WMATA 1757 Deposit of Sequestered Funds (July 9, 2021). On July 27, 2021, defendant 2510 Bladensburg Road LLC filed a motion to release these funds, pursuant to Fed. R. Civ. P. 71.1(j)(2).  *See* Def.'s Consent Mot. to Release Funds On Deposit, WMATA 1757 ECF No. 10.  The next day, defendant Northeast Iron Works Land Partnership filed a similar motion to release the deposited funds in the companion case.  *See* Def.'s Consent Mot. to Release Funds On Deposit, WMATA 1753 ECF No. 10.  Without objection from plaintiff, the Court granted defendants' motions on July 28, 2021.  *See* Order, WMATA 1753 ECF No. 11, WMATA 1757 ECF No. 11.

Then, on September 3, 2021, defendants filed Answers in each case that are, for all relevant purposes, identical.  *See* Answer.  With respect to (1) plaintiff's "authority for the acquisition," Compl. ¶ 3; (2) the "public purpose for which the property is taken," *id.* ¶ 4; (3) the "legal description of the property," beyond its street address, *id.* ¶ 5; and (4) the accuracy of the map provided by plaintiff, *id.* ¶ 6, defendants stated they were "[w]ithout sufficient information to form a belief about the truth of the allegations" and "demand[ed] strict proof thereof," Answer ¶ 3; *see also id.* ¶¶ 4–6 (making same statement).  Defendants denied that the estimated compensation "constitutes the just compensation that the Defendants are entitled to receive," and that "such deficient compensation tendered in this matter entitles Defendants to recovery of its [sic] attorney fees and costs under the Equal Access to Justice Act" ("EAJA"), 28 U.S.C. § 2412,

and to "additional damages . . . under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970" ("URA"), 42 U.S.C. § 4601, *et seq.  Id.* ¶ 8.

In light of defendants' Answers, on September 24, 2021, plaintiff moved for judgment on the pleadings, asserting that the takings were lawful and justified, and that the defenses and objections raised by defendants were insufficient.  *See* Pl.'s Mot. at 2.  Defendants failed to file timely oppositions to plaintiff's motion, and were ordered to show cause ("OTSC") why plaintiff's motion "should not be granted as conceded."  WMATA 1753 OTSC (Oct. 13, 2021); WMATA 1757 OTSC (Oct. 13, 2021).  Defendants filed timely responses to the OTSC issued to them, clarifying that plaintiff's motion "was not conceded," Defs.' Reply to Court's OTSC at 1, WMATA 1753 ECF No. 20, WMATA 1757 ECF No. 23, and appending their belated oppositions to plaintiff's motion, *see* Defs.' Mem. Supp. Court Ordered Show Cause as to Delay in Opp'n to Pl.'s Mot. for J. on Pleadings and to Strike Answer as to a Demand for Proof of Justified Public Purpose ("Defs.' Opp'n"), WMATA 1753 ECF No. 20-2, WMATA 1757 ECF No. 23-2.  After seeking one extension of the reply deadline, *see* Pl.'s Unopposed Mot. to Extend the Reply Deadline, WMATA 1753 ECF No. 21, WMATA 1757 ECF No. 24, which the Court granted, *see* WMATA 1753 Min. Order (Oct. 21, 2021), WMATA 1757 Min. Order (Oct. 19, 2021), plaintiff filed a reply in support of its motion on October 29, 2021, *see* Pl.'s Reply Supp. Mot. for J. on Pleadings as to the Authority for and Public Purpose of the Taking and to Strike Insufficient Defenses and Objections ("Pl.'s Reply"), WMATA 1753 ECF No. 22, WMATA 1757 ECF No. 27.

Pursuant to the parties' request, *see* Jt. LCvR 16.3 Report to the Court at 3, WMATA 1753 ECF No. 19, WMATA 1757 ECF No. 21, discovery has been stayed "pending a decision

on" plaintiff's motion, *see* WMATA 1753 Min. Order (Oct. 4, 2021), WMATA 1757 Min. Order (Oct. 4, 2021), which is now ripe for resolution.

## II.    LEGAL STANDARD

Actions "to condemn real and personal property by eminent domain" in federal court are governed by Federal Rule of Civil Procedure 71.1.  FED. R. CIV. P. 71.1(a).  The complaint in an eminent domain action must describe, in "a short and plain statement," the (1) "authority for the taking;" (2) "uses for which the property is to be taken;" (3) "interests to be acquired" as well as a (4) description of the property "sufficient to identify" it; and (5) "designation of each defendant who has been joined as an owner or owner of an interest in it."  FED. R. CIV. P. 71.1(c)(2).  Any defendant with "an objection or defense to the taking" of the property must, "within 21 days after being served," serve an answer to the complaint identifying "the property in which the defendant claims an interest," the "nature and extent of that interest," and any and all "objections and defenses" the defendant has to the taking.  FED. R. CIV. P. 71.1(e)(2).  "A defendant waives all objections and defenses not stated in its answer," and "[n]o other pleading or motion asserting an additional objection or defense is allowed."  FED. R. CIV. P. 71.1(e)(3).  Unless the law provides other mechanisms for determining compensation, "the court tries all issues, including compensation."  FED. R. CIV. P. 71.1(h)(1).  Upon plaintiff's "deposit with the court [of] any money required by law as a condition to the exercise of eminent domain," the court must "distribute the deposit and [] determine and pay compensation."  FED. R. CIV. P. 71.1(j); *see also* D.C. CODE § 16-1353(b) (mandating, "[u]pon the filing of the declaration of taking," that the plaintiff "deposit in the registry of the court . . . the amount of the estimated compensation stated in the declaration," which funds are for "the use of the persons entitled thereto").  If compensation finally awarded to a defendant exceeds the portion of the deposit distributed to that defendant, "the court must enter judgment against the plaintiff for the deficiency"; conversely, if

the court awards less to a defendant than what was distributed to that defendant, "the court must enter judgment against that defendant for the overpayment." FED. R. CIV. P. 71.1(j)(2).

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "In considering a motion for judgment on the pleadings, the Court should accept as true the allegations in the opponent's pleadings and accord the benefit of all reasonable inferences to the non-moving party." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (internal quotation marks omitted); *see also Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760–61 (D.C. Cir. 2019) ("The moving party must demonstrate its entitlement to judgment in its favor, even though the 'court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant.'" (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006))). The movant is entitled to judgment under Rule 12(c) by demonstrating that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation marks omitted).

A court may not consider "matters outside the pleadings" without converting the motion to one for summary judgment. FED. R. CIV. P. 12(d); *see also Stephens v. Kemp*, 469 U.S. 1043, 1057 (1984) (Brennan, J., dissenting from denial of certiorari) ("Rule 12(c), for example, provides that if a court considers matters outside the pleadings in determining whether to enter judgment, the motion shall be considered as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." (internal quotation marks omitted)). Nevertheless, without triggering the conversion rule, a court may

consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Liberty Mar. Corp.*, 933 F.3d at 760 ("Pleadings include any 'copy of a written instrument that is an exhibit to a pleading,' such as relevant and authentic documents attached to the complaint." (quoting FED. R. CIV. P. 10(c) and citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009))).

## III.   DISCUSSION

Plaintiff moves "for judgment on the pleadings as to the authority for the taking[s]" and their "public purpose," as well as "to strike the insufficient defenses and objections" put forward by defendants in their Answer.  Pl.'s Mot. at 3.  According to plaintiff, "[a]djudicating the legal validity of the taking[s]" at this stage, *id.* at 7–8, "will not affect the parties' rights to contest the amount of compensation or claim a share in the ultimate award," *id.* at 2, but "will allow the parties and this Court to focus their resources on the ultimate issue in [each] case—the determination of just compensation," *id.* at 8.  Defendants, in turn, argue that plaintiff has not met its burden in demonstrating the validity of the takings, and that the motion should be denied to allow for "limited discovery" on the issue of plaintiff's compliance "with all Federal laws for takings in public transportation projects."  Defs.' Opp'n at 11.

Plaintiff's motion for judgment on the pleadings as to the authority for and public purpose of the takings is discussed first, followed by its motion to strike the other defenses and objections in defendants' Answer.

### A.   Motion for Judgment on the Pleadings as to the Authority for and Public Purpose of the Acquisitions

Plaintiff seeks judgment on the pleadings "with respect to WMATA's authority and the public purpose for which the Property was taken," Pl.'s Mot. at 7, on the grounds that "WMATA

has legal authority for the taking" of these tracts of land, and the purpose for which the property was taken, "the Bladensburg Bus Terminal reconstruction project, . . . is a valid public purpose," *id*. at 2.  As support, plaintiff contends that "the authority for the taking and public purpose . . . are matters of public record and fully described" in plaintiff's Complaint and Declaration of Taking, *id.*, and that defendants' Answer has failed to raise any "legally cognizable defense to the taking," *id.* at 7.  Defendants, in turn, assert that plaintiff has put forth insufficient evidence to prove that the taking of defendants' property was authorized or done for a valid public purpose.  *See* Defs.' Opp'n at 3–14.  They also reiterate an affirmative defense under the EAJA. *Id.* at 14– 16. [8]

When the amount of compensation is undisputed or otherwise not before the court, "the only substantive question for judicial review in a condemnation proceeding is whether the purpose for which the property was taken is for a Congressionally authorized public use." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 949 (9th Cir. 2008) (quoting *United States v. 0.95 Acres of Land*, 994 F.2d 696, 698 (9th Cir. 1993) (internal alterations omitted)); *see also Berman v. Parker*, 348 U.S. 26, 32–33 (1954); *United States ex rel. TVA v. Welch*, 327 U.S. 546, 551–52 (1946).  "[I]t is clear that a condemnee may challenge 'the validity of the taking for departure from the statutory limits,'" *United States v. 162.20 Acres of Land, More or Less, Situated in Clay Cnty., State of Miss.* ("*162.20 Acres*"), 639 F.2d 299, 303 (5th Cir. 1981) (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1944)), but "federal courts do not second-guess governmental agencies on issues of necessity and expediency when

---

[8] Defendants further argue that plaintiff's motion should be denied because plaintiff did not file a "statement of No Genuine Statement of Facts Not in Dispute [sic] as required by Fed. R. C[i]v. P. 56 and L.Cv.R. 7," Defs.' Opp'n at 4, but plaintiff brings the instant motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which imposes no obligation to file such a statement.  Defendants' reference to Local Civil Rule 7, which similarly requires that a motion for summary judgment "shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue," D.D.C. LCvR 7(h)(1), is irrelevant for the same reasons.

condemnation is sought," as "the concept of justiciability limits judicial review to the bare issue of whether the limits of authority were exceeded," and questions of "necessity and expediency . . . are within the discretion of the legislature or of administrative bodies by delegation," *id.* (citing *Berman*, 348 U.S. at 32–33, other citations omitted).

Here, none of the defenses put forward by defendants constitute legally cognizable objections to the takings of the property, nor are they grounds to deny the motion in order to permit discovery on the validity of the taking. Defendants' asserted objections and defenses are discussed first, followed by plaintiff's authority for the takings and the public purpose.

### 1.    Defendants Have Raised No Valid Defenses or Objections to the Takings

Federal Rule of Civil Procedure 71.1(e)(3) is clear that the only vehicle through which a defendant can raise objections or defenses to a taking is in an answer to the complaint. Here, the blanket denials contained in defendants' Answer are insufficient, and defendants have asserted no other legally cognizable defenses to plaintiff's argument that the takings were valid.

First, with respect to plaintiff's "authority for the acquisition," and the "public purpose for which the property is taken," the Answer simply stated defendants were "[w]ithout sufficient information to form a belief about the truth of the allegations" and "demand[ed] strict proof thereof." Answer ¶¶ 3–4. Nowhere did defendants explain *why* the allegations set forth in the Complaint were insufficient to demonstrate their truth, or offer any specific objection to plaintiff's asserted authority and public purpose for the takings, as set forth in Schedules A and B appended to the Complaint. Put another way, they "present[ed] no facts or circumstances from which the Court can conclude" that plaintiff's actions "are anything but an exercise of [its] lawful authority," nor did they point to anything "in the record to suggest[] that the taking of the property [was] either speculative or pretextual." *Duk Hea Oh v. Nat'l Capital Revitalization Corp.*, 7 A.3d 997, 1002 (D.C. 2010). As such, defendants' conclusory denials in their Answer

12

provide little to no understanding of the basis for their position and therefore fail to qualify as "objections or defenses" to the takings.  So long as the Court finds that plaintiff had the authority to take the property and was doing so for a valid public purpose, defendants' blanket denials included in their Answer are no obstacle to granting plaintiff's motion.  *See United States v. An Easement and Right-of-Way Over 3.28 Acres of Land, More or Less, in Lee County, Miss.*, No. 15-cv-19 (GHD), 2017 WL 916415, at *4 (N.D. Miss. Mar. 7, 2017) (granting plaintiff's motion for judgment on the pleadings where defendants' objections or defenses to the taking amounted to "conclusory" statements that "need not be considered by the Court," such as "The [property] is not being taken for the public use," and where defendants had "cited no authority to the contrary").

Defendants attempt to compensate for their cursory and conclusory Answer by elaborating on their positions in their opposition briefing to the instant motion, but such efforts are too little, too late.  They argue, *inter alia*, that the takings are invalid because plaintiff has not met "its burden of proof that it has conducted the proper hearings," or satisfied the "Federal Transportation Administration legal requirements," or "submitted the findings of any Environmental Impact Study" ("EIS") or "Large Tract Review" prepared for the project.  Defs.' Opp'n at 3–4 (citing *id*., Ex. 1, Request for Feedback: Proposed Reconstruction of Metro's Bladensburg Bus Garage, WMATA 1753 ECF No. 20-3, WMATA 1757 ECF No. 23-3; *id*., Ex. 2, Defs.' Jan. 4, 2021 Ltr. to D.C. Office of Planning re Large Tract Review, WMATA 1753 ECF No. 20-4, WMATA 1757 ECF No. 23-4; *id*., Ex. 3, Defs.' Oct. 18, 2019 Ltr. to WMATA re Public Comments for the Record on the Proposed Modifications to the Bladensburg Garage, WMATA 1753 ECF No. 20-6, WMATA 1757 ECF No. 23-5).  Defendants further question the necessity of the takings in light of changes to the design of the remodeled bus terminal, *see id.* at

13

9, "declining" ridership, and that "newer buses are smaller in size and therefore more new vehicles can be parked in the same space," *id* at 10. Moreover, they express skepticism about the appropriateness of expanding this bus garage, as opposed to others in the District, Virginia, and Maryland. *Id*. These arguments are easily dispatched for several reasons. First, "federal courts do not second-guess governmental agencies on issues of necessity and expediency when condemnation is sought," *162.20 Acres*, 639 F.2d at 303, and "[f]ailure to prepare an EIS is not an affirmative defense to a condemnation action," *WMATA v. Fleischman*, No. 96-1868, 1997 WL 232301, at *1 (4th Cir. May 8, 1997) (citing *United States v. 178.15 Acres of Land*, 543 F.2d 1391 (4th Cir. 1976); *0.95 Acres of Land*, 994 F.2d at 699; *United States v. 255.25 Acres of Land*, 553 F.2d 571, 572 n.2 (8th Cir. 1977)); *see also* Pl.'s Reply at 6–10. [9] Second, regardless of their merits, defendants' arguments necessarily fail, as the Federal Rules unequivocally state that all objections and defenses to the taking must be stated in the answer. FED. R. CIV. P. 71.1(e)(2)(C). Consequently, "[a] defendant waives all objections and defenses not stated in its answer" and "[n]o other pleading or motion asserting an additional objection or defense is allowed." FED. R. CIV. P. 71.1(e)(3). Waiting until opposition briefing to raise objections to the takings that are not articulated nor even hinted at in the Answer does not suffice under the applicable procedural rule.

Defendants' Answer also includes an objection to plaintiff's estimated just compensation for the taking of their property, which defendants argue is insufficient and that "such deficient

---

[9]     *Bootery, Inc. v. WMATA*, 326 F. Supp. 794 (D.D.C. 1970), on which defendants rely in support of their argument that plaintiff has failed to "meet its burden of proof that it conducted the proper hearings[] and investigation . . . that [] supports the financial aspect of this taking under Federal and local District law," Defs.' Opp'n at 3, is not a condemnation case and therefore inapposite. Even if plaintiffs there had in fact had their property seized by WMATA—and it is not clear from the decision whether plaintiffs *actually* had been subject to eminent domain proceedings, *see Bootery, Inc.*, 326 F. Supp. at 799—plaintiffs brought their challenge to WMATA's broader authority to adopt the Mass Transit Plan in a standalone civil action, not as a defense to the takings in an action under Federal Rule of Civil Procedure 71.1.

compensation" entitles them to recover attorney fees and costs under the EAJA.  Answer ¶ 8. This argument is peripheral to the validity of the taking, as the sufficiency of the estimated compensation has no bearing on whether plaintiff has exercised its condemnation power in accordance with a congressionally authorized purpose.  The Court, of course, has a role to play in ensuring interested parties receive fair and adequate compensation for the taking of their property through eminent domain.  *See* FED. R. CIV. P. 71.1(j)(2) (the court's role is to "distribute the deposit and [] determine and pay compensation"); *United States v. Reynolds*, 397 U.S. 14, 20 (1970) (describing the "narrow but important function" of the factfinder in a federal condemnation proceeding as "the determination of a compensation award within ground rules established by the trial judge").  Yet, plaintiff repeatedly emphasizes that, at this time, no final judgment as to the adequacy of the just compensation estimations is being sought.  *See* Pl.'s Mot. at 2, 7–8.  Thus, the assertion that defendants are entitled to additional damages is not a "defense or objection" to the taking itself, and is in fact irrelevant to the question currently before the Court, namely: whether plaintiff's taking was for a "Congressionally authorized public use." *Id.* at 5 (quoting *0.95 Acres of Land*, 994 F.2d at 699).

Due to the lack of substantive defenses or objections to the takings set forth in defendants' Answer, the Court next turns to plaintiff's descriptions of the authority for and purpose of the takings, as detailed in the schedules appended to the Complaint, to determine whether plaintiff has shown that the property was taken for a congressionally authorized use, *see Welch*, 327 U.S. at 551–552, and that plaintiff is therefore entitled to judgment as a matter of law.

### 2.        Plaintiff Has Authority for the Takings

To start, plaintiff has demonstrated that it was legally authorized to exercise the power of eminent domain over defendants' property, pursuant to the WMATA Compact and the eminent domain procedures outlined in the D.C. Code.  *See* Pl.'s Mot. at 9–15.

Eminent domain is the "power of the Government for its own sovereign purposes to appropriate private property" without the owner's consent.  *Maiatico v. United States*, 302 F.2d 880, 886 (D.C. Cir. 1962).  The federal government's authority to exercise this "attribute of sovereignty," *0.95 Acres of Land*, 994 F.2d at 698, is limited by the Fifth Amendment to the United States Constitution, which prohibits the taking of "private property . . . for public use, without just compensation," U.S. CONST. amend. V.  Neither a court nor the property owners may "determine whether or not a particular project be desirable," *Maiatico*, 302 F.2d at 886, but rather must focus their inquiry on "the validity of the taking for departure from the statutory limits," *id.* (quoting *Catlin*, 324 U.S. at 240).  In other words, "[t]he court's role is merely to determine whether the asserted statutory authority authorizes the taking of the property for the asserted purpose."  *Calf Island Cmty. Tr., Inc. v. Young Mens Christian Assoc. of Greenwich*, 392 F. Supp. 2d 241, 247 (D. Conn. 2005) (citing *Welch*, 327 U.S. at 552).

As an interstate transit authority, plaintiff's power to condemn and take private property stems not from any inherent sovereignty, but from the congressional delegation of that power to it.  In 1967, WMATA was "formed after Congress 'consent[ed] to, adopt[ed] and enact[ed]'" the WMATA Compact, "an interstate transit authority compact among the District of Columbia, Maryland, and Virginia."  *Unsuck DC Metro v. WMATA*, No. 19-cv-1242 (CJN), 2021 WL 5823800, at *1 (D.D.C. Dec. 8, 2021) (quoting WMATA Compact, D.C. CODE § 9-1107.01, other citations omitted).  Section 82 of the WMATA Compact empowers plaintiff "to acquire by condemnation, whenever in its opinion it is necessary or advantageous to [plaintiff] to do so, any

reason or personal property, or any interest therein, necessary or useful for the transit system authorized herein," WMATA Compact § 82(a), so long as plaintiff complies with the condemnation procedures set forth in the D.C. Code, *id.* § 82(b) (citing D.C. CODE §§ 16-1351–1366), and pays "[a]ny award or compensation for the taking of property pursuant to this Title," *id.* § 82(c). [10]  By consenting to the WMATA Compact, Congress is therefore "deemed to have delegated federal condemnation powers" to plaintiff.  *WMATA v. One Parcel of Land in Montgomery Cty., Md.* ("*One Parcel*"), 706 F.2d 1312, 1319 (4th Cir. 1983); *see also Heffez v. WMATA*, 569 F. Supp. 1551, 1554 (D.D.C. 1983) (citing *One Parcel* for the proposition that "WMATA's power of eminent domain is federal in origin").  Plaintiff therefore has the general authority to exercise the power of eminent domain, where necessary, across the District of Columbia.

Moreover, plaintiff has demonstrated adequately that these *specific* takings were lawful exercises of its general statutory authority.  As explained in Schedule A to the Complaint, WMATA Policy Instruction No. 9.6 "authorizes the WMATA Vice President of Real Estate and Parking to acquire real property on behalf of WMATA."  Sched. A at 1; *see also* Pl.'s Mot., Ex. 2, WMATA Policy Instruction No. 9.6, WMATA 1753 ECF No. 17-2, WMATA 1757 ECF No. 19-2.  At the time of the takings, that position was held by Nina Albert, whose Declaration of Taking attested to the authority for the acquisition and its public purpose, Albert Decl. ¶¶ 1–2, and affirmed that "[t]he sum estimated by [her] as just compensation for the taking" was "deposited herewith in the registry of the Court for the use and benefit of the persons entitled

---

[10]      As plaintiff notes, *see* Pl.'s Mot. at 11, the WMATA Compact explicitly instructs that plaintiff should conduct condemnation proceedings pursuant to D.C. CODE §§ 16-1351–1368, the section of the D.C. Code governing eminent domain proceedings carried out on behalf of the United States.  Absent this specification, plaintiff would not be eligible to conduct proceedings under this portion of the D.C. Code because, as discussed in Section III.B. *infra*, plaintiff is not an agency of the federal government.

thereto," *id.* ¶ 6.  Plaintiff further notes that its "Fiscal Year 2021 Budget provides funding for the acquisition" of the properties in connection with "Capital Improvement Project 0311 – Bladensburg Bus Garage Replacement."  Pl.'s Mot. at 12 (citing *id.*, Ex. 3, WMATA Fiscal Year 2021 Budget Excerpts at 4–5, WMATA 1753 ECF No. 17-3, WMATA 1757 ECF No. 19-3).  As plaintiff rightly notes, defendants raised no "specific, valid objections or defenses related to [its] authority for the taking[s] in their Answer," and "do not appear to have any real dispute with [its] authority for the taking[s]."  *Id.*  The Court thus finds plaintiff has established that the takings here were "appropriately authorized and funded," *id.*, and that plaintiff is entitled to judgment on the pleadings as to its authority for the takings.

### 3.    The Takings Have a Valid Public Purpose

In addition to being congressionally authorized, a taking under eminent domain must also be "for public use."  U.S. CONST. amend. V.  "[I]t is the function of Congress to decide what type of taking is for a public use and that the agency authorized to do the taking may do so to the full extent of its statutory authority."  *Welch*, 327 U.S. at 551–52.  "'[I]t is only the taking's purpose, and not its mechanics' . . . that matters in determining public use," *Kelo v. City of New London, Conn.*, 545 U.S. 469, 482 (2005) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 244 (1984)), and a court may "not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation,'" *Midkiff*, 467 U.S. at 241 (quoting *United States v. Gettysburg Elec. Ry. Co.*, 160 U.S. 668, 680 (1896)).  Put another way, "[w]hen the legislature's purpose is legitimate and its means are not irrational, . . . empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in federal courts."  *Id.* at 242–43.  Thus, "[t]he district court, powerless to dismiss the proceedings, performs an almost ministerial function in decreeing the transfer of title."  *162.20 Acres*, 639 F.2d at 303.  "Only in cases of

egregious bad faith will the right to condemn be denied, for in those circumstances the taking may not be for a 'public' use at all." *United States v. 416.81 Acres of Land*, 514 F.2d 627, 632 (7th Cir. 1975) (internal citation omitted).

Here, plaintiff's intentions for this property are well in line with the public purpose requirement.  Schedule B to the Complaint states the property was taken in connection with the Bladensburg Bus Terminal Replacement project, "for the construction, operation, use, and maintenance of a replacement bus garage facility and related facilities and activities in support of [WMATA's] rapid rail transit system."  Sched. B at 1.  Such a project plainly furthers the public purposes of the WMATA Compact, "to improve public transportation for the national capital region," including through "the development, construction, and operation of a regional subway-rapid rail system."  *McKenna v. WMATA*, 670 F. Supp. 7, 9 (D.D.C. 1986); *see also WMATA v. Johnson*, 467 U.S. 925, 927 (1984) ("WMATA is charged with the construction and operation of a rapid transit system (Metro) for the District of Columbia and the surrounding metropolitan region.").  Given the narrow scope of judicial review of a taking, *see Welch*, 327 U.S. at 551–52, plaintiff's stated intention to take this property to expand and reconstruct a bus garage housing and servicing hundreds of buses that carry passengers around the nation's capital and the surrounding region each day plainly constitutes the taken property's public use.  *See also Fleischman*, 1997 WL 232301, at *1 (affirming taking of defendant's property where "the purpose of the condemnation was to secure property for the building of parking facilities for a new Metro rail station, and we find that this satisfies the requirements in *Welch*").

## B.   Motion to Strike Arguments Regarding Entitlement to Additional Compensation

As noted, defendants' Answer objects to plaintiff's estimated just compensation for the taking.  *See* Answer ¶ 8.  Defendants argue the $880,000 and $1,060,000 valuations for their respective properties are inaccurate, and that "such deficient compensation tendered in this

matter entitles Defendants to recovery of its [sic] attorney fees and costs under the [EAJA]."   *Id.*
Plaintiff moves, under Federal Rule of Procedure 12(f), to strike this defense from the Answer as
"insufficient and immaterial," and not a "defense[] to the taking."   Pl.'s Mot. at 15.   According to
plaintiff, allowing this defense "to stand . . . will cause substantial confusion and undue
prejudice" to plaintiff, by "likely result[ing] in Defendants seeking unwarranted discovery"
regarding this defense, and "in uncertainty to WMATA, Defendants and the public as to whether
there is any remaining avenue to challenge the validity of the taking[s] under the defenses and
objections raised in the Answer."   *Id.* at 16.   The Court agrees, and plaintiff's motion to strike is
granted as to both cases. [11]

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a
pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
matter."   FED. R. CIV. P. 12(f).   "The decision to grant or deny a motion to strike is vested in the
trial judge's sound discretion."   *Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34, 44
(D.D.C. 2021) (quoting *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 251 (D.D.C. 2018)).
Although motions to strike are generally "disfavored by the federal courts," *Campaign Legal
Ctr. v. Iowa Values*, No. 21-cv-389 (RCL), 2021 WL 5416635, at *3 (D.D.C. Nov. 19, 2021)

---

[11]     Defendants' Answer also claimed that defendants were entitled to "additional damages due to unpaid
relocation expenses" under the URA, Answer ¶ 8; *see also* 42 U.S.C. § 4601 *et seq.*, which provides for the award of
certain moving costs and "relocation assistance" to individuals displaced "as a direct result of programs or projects
undertaken by a Federal agency or with Federal financial assistance," 42 U.S.C. § 4621(a), "[i]n order to encourage
and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in
the courts, [and] to ensure consistent treatment for owners in the many Federal programs," *id.* § 4651.   Defendants'
opposition does not address the URA, *see generally* Defs.' Opp'n, and plaintiff's motion to strike is therefore treated
as conceded as to this defense.   Even if defendants had not conceded this argument, however, it fails because the
URA, by its explicit terms, does not "affect the validity of any property acquisitions by purchase or condemnation,"
42 U.S.C. § 4601(a), or create "any element of value or of damage" in "any condemnation proceedings brought
under the power of eminent domain," *id.* § 4601(b).   *See, e.g., Tenn. Gas Pipeline Co. v. New England Power,
C.T.L., Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (The URA "does not relate to takings by eminent domain.
Rather, the statute explicitly encourages federal agencies to negotiate for the purchase of real property in an effort to
avoid eminent domain actions, and sets guidelines—to be followed to the greatest extent possible—for agencies
negotiating such purchases." (internal quotation marks omitted)).

(internal quotation marks omitted); *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam), they are granted "where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense," *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 150 (D.D.C. 2009) (quoting *SEC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343, 344 (D.D.C. 1980)).  *See also United States v. Dico, Inc.*, 266 F.3d 864, 880 (8th Cir. 2001) (affirming the striking of defense where plaintiff's taking was clearly authorized by federal statute).

Plaintiff correctly identifies two issues with defendants' EAJA argument rendering it invalid.  First, as previously discussed, the sufficiency of the compensation is not a defense to the validity of the taking of property through eminent domain, and the Federal Rules provide a defendant with ample opportunities to contest the valuation of the property before the judgment is finalized.  *See* Fed. R. Civ. P. 71.1(e)(3) ("[A]t the trial on compensation, a defendant—whether or not it has previously appeared or answered—may present evidence on the amount of compensation to be paid and may share in the award.").

More importantly, however, defendants' argument regarding the EAJA is an "insufficient defense" to the taking of defendants' property because it is legally invalid.  The EAJA "authorizes a private litigant to recover attorney's fees incurred in litigation against the federal government when: (1) the litigant has prevailed in the lawsuit; and (2) the government cannot prove its position in the lawsuit was substantially justified." *Am. Council of Blind v. WMATA*, 133 F. Supp. 2d 66, 71 (D.D.C. 2001) (citing 28 U.S.C. § 2412(d)(1)).  The statute clearly states, however, that this provision applies only in "civil action[s] brought by or against the United States or any *agency* or official of the United States."  28 U.S.C. § 2412(a)(1) (emphasis added).

As plaintiff rightly notes, *see* Pl.'s Mot. at 16, WMATA is generally not considered a federal agency, and therefore not "an agency . . . of the United States," 28 U.S.C. § 2412(a)(1).  *See Schindler Elevator Corp. v. WMATA*, 16 F.4th 294, 301–02 (D.C. Cir. 2021) (holding that "WMATA, as an interstate compact entity, is not a federal agency within the scope of the APA" because it "'is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia'—the Signatories to the Compact" (quoting *Old Town Trolley Tours of Wash., Inc. v. Wash. Metro. Area Transit Comm'n*, 129 F.3d 201, 203 (D.C. Cir. 1997)); *see also Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 333 (D.C. Cir. 2018) (finding WMATA to be "an instrumentality and agency of *states*" for purposes of the Religious Freedom Restoration Act (emphasis added)); *Unsuck DC Metro*, 2021 WL 5823800, at *5 ("WMATA is an entity created through an interstate compact, not a federal administrative agency."); *Seal & Co., Inc. v. WMATA*, 768 F. Supp. 1150, 1154, 1157 (E.D. Va. 1991) (finding that "Congress intended WMATA to conduct its procurements as a federal agency would," but that WMATA was "not a *federal* agency" but rather "an instrumentality and agency of each of the signatory parties" (emphasis in original, quoting *One Parcel*, 706 F.2d at 1314)). [12]  Defendants point to no cases treating WMATA differently, for purposes of the EAJA or otherwise. [13]

Accordingly, defendants' assertion of the EAJA as an affirmative defense is legally insufficient to the clearly authorized taking of defendants' property, and therefore this defense is properly stricken from defendants' Answer.

---

[12]     One of cases cited by defendants, *Bootery, Inc.*, describes WMATA as "an agency of each of the signatory parties *including the United States on behalf of* the District of Columbia."  326 F. Supp. at 799 (emphasis added, internal citations omitted).  Any suggestion, however, that WMATA might therefore be considered a federal agency has been roundly and consistently dismissed by other courts in the intervening fifty years.  *See Unsuck DC Metro*, 2021 WL 5823800, at *5 (collecting cases).

[13]     Defendants cite *Nat. Resources Def. Council, Inc. v. EPA*, 703 F.2d 700 (3d Cir. 1983), but that case is inapposite because the defendant there was the Environmental Protection Agency, *see id.* at 701, which plainly qualifies as an "agency . . . of the United States," 28 U.S.C. § 2412(a)(1).

**IV.     CONCLUSION**

For the reasons set forth above, plaintiff's Motion for Judgment on the Pleadings as to the Authority for and Public Purpose of the Taking and to Strike Insufficient Defenses and Objections, WMATA 1753 ECF No. 17, WMATA 1757 ECF No. 19, is **GRANTED**.  An order consistent with this Memorandum Opinion will be entered contemporaneously in each of these two related cases.

DATE: July 5, 2022

_____
BERYL A. HOWELL
Chief Judge